## IN THE UNITED STATES DISTRICT COURT

## FOR THE DISTRICT OF DELAWARE

ARLANDO INGRAM,                          :
                                         :
                  Petitioner,            :
                                         :
         v.                              :        Civil Action No. 19-2084-CFC
                                         :
ROBERT MAY, Warden, and                  :
ATTORNEY GENERAL OF THE                  :
STATE OF DELAWARE,                       :
                                         :
                  Respondents.           :

_____

Arlando Ingram. *Pro se* Petitioner.

Sean P. Lugg, Deputy Attorney General of the Delaware Department of Justice, Wilmington, Delaware.  Attorney for Respondents.

_____

## **MEMORANDUM OPINION**

February 9, 2023
Wilmington, Delaware

CONNOLLY, CHIEF JUDGE:

Pending before the Court are Petitioner Arlando Ingram's Petitions for a Writ of Habeas Corpus Pursuant to 28 U.S.C § 2254.  (D.I. 2; D.I. 3; D.I. 9; D.I. 10)  The State filed an Answer in opposition, to which Petitioner filed a Reply.  (D.I. 21; D.I. 26)  For the reasons discussed, the Court will deny the relief requested and dismiss the Petitions.

## I.   BACKGROUND

> [Petitioner] was initially indicted in a 48 count indictment in December 2012 for his alleged participation in a veritable Robbery crime wave, involving multiple armed robberies of small businesses in the Dover, Delaware area. The robberies occurred in August and September 2012. Following the final robbery which occurred on September 4, 2012, [Petitioner's] co-defendants were apprehended while fleeing the scene. Although the police saw three suspects fleeing the scene [Petitioner] was able to avoid capture at the time. Following the arrest of [Petitioner's] co-defendants, the day of the Robbery, one of the suspects told the police that [Petitioner] was the third suspect who had gotten away from the police. Additionally the police recovered an unopened pack of Newport cigarettes, which the victims had told the police had been taken by the robbers, along the path that the third suspect had fled. After a forensic exam [Petitioner's] fingerprints were identified on the Newport cigarette pack. Based on these facts the police developed [Petitioner] as the final suspect in the Robbery spree. Armed with a search warrant the Dover Police arrested [Petitioner] on September 27, 2012 after [Petitioner] resisted arrest and was found with a loaded firearm similar to the one the victims identified as being used in the robbery.

*State v. Ingram*, 2018 WL 3459209, at *1 (Del. Super. Ct. June 28, 2018).

Included in the original December 2012 forty-eight count indictment were five counts of possession of a firearm by a person prohibited ("PFBPP") and two counts of possession of a deadly weapon by a person prohibited ("PDWBPP").  (D.I. 22-1); *see Ingram*, 2018 WL 3459209, at *1 (stating there were seven counts of PFBPP in the

original indictment).  Petitioner's trial for all the charges associated with the September 4, 2012 robbery and his September 27, 2012 arrest was scheduled to begin on November 18, 2013.  (D.I. 22-2 at Entry No. 4)

On May 23, 2013, Petitioner filed a motion to sever the five PFBPP charges from the robbery charges.  (D.I. 22-1 at Entry No. 28)  The Superior Court granted the motion on May 31, 2013.  (D.I. 22-1 at Entry No. 29)  On May 5, 2014, the day Petitioner's trial for the PFBPP charges was to begin, Petitioner made an oral motion to sever two counts of PFBPP from the other remaining charges.  (D.I. 22-3 at Entry No. 2)  The Superior Court granted the motion that same day.  (D.I. 22-3 at Entry No. 3)  Petitioner immediately proceeded to trial  "on the two counts of PFBPP.  One count, which was charged in connection with [Petitioner's] September 27 arrest, was tried before a jury. The other count, which was charged in connection with September 4 robbery, was tried before the trial judge but then *nolle prossed*."  *Ingram v. State*, 108 A.3d 1225 (Table), 2015 WL 631581, at *1 (Del. Feb. 11, 2015).  The case on the PFBPP charge that went to a jury trial is hereinafter referred to as the "D Case."

After the PFBPP charges were severed in May 2013, the trial on the remaining original charges was still scheduled to begin on November 18, 2013.  (D.I. 22-2 at Entry No. 4)  On November 12, 2013, Petitioner filed a motion to suppress evidence seized from his sister's residence on the day of his arrest.  (*Id.* at Entry No. 2)  On November 18, 2013, the first day of trial, the State made an oral motion to sever from the remaining charges Petitioner's (1) resisting arrest charge related to his September 27, 2012 arrest and (2) the charges related to the September 4, 2012 robbery – two counts of first degree robbery, one count of possession of a firearm during the commission of a

2

felony, one count of second degree conspiracy.  With the agreement of Petitioner and

his counsel, the Superior Court granted the severance request.  (D.I. 22-17 at 64-66)

Immediately thereafter, the Superior Court heard testimony on Petitioner's motion to

suppress the evidence obtained from his arrest on September 27, 2012, denied the

motion from the bench, and commenced the trial.   (*Id.* at Entry No. 5*); see State v.

Ingram*, 2018 WL 3459209, at *1 (Del. Super. Ct. June 28, 2018).  This case on the

severed robbery and resisting arrest charges is hereinafter referred to as the "C Case."

The same defense counsel represented Petitioner in the severed C and D

Cases, and separate Superior Court juries convicted Petitioner of the charges

associated with those cases.[1]  The specific factual and procedural histories of the C and

D cases are set forth separately below.

### A. The C Case:  September 4, 2012 Robbery and September 27, 2012 Resisting Arrest

> On September 4, 2012, three black males—two adults and one teenager—robbed the Baycourt Plaza Family Dollar store in Dover, Delaware. One adult wore a black ski mask. The other adult wore a tee-shirt tied around the lower half of his face and had a gun. The teenager did not wear a mask.

> Two female employees, a store cashier and a manager, were in the store at the time of the robbery. The gunman ordered the cashier to open the cash registers. When she could not, the man in the black ski mask ordered her to the floor, and the gunman ordered the manager to open the cash registers. Meanwhile, the teenage boy removed packs of Newport cigarettes and Swisher cigars from a cabinet behind the front counter. When leaving the store, the three suspects fled down a nearby bike path, taking with them the cash from the cash

---

[1]"Following the sentencing [in the C and D cases,] the State entered nolle prosequis on the remaining Robbery related counts, without prejudice due to [Petitioner] having received a total of 100 years in jail following the two trials." *State v. Ingram*, 2018 WL 3459209, at *2 (Del. Super. Ct. June 28. 2018).

registers, nearly three dozen packs of Newports, and several cigars. The store manager immediately called 911.

Within minutes of the 911 dispatch, Dover police apprehended two suspects in the area of the bike path. The police also recovered from the bike path a black ski mask, a pack of unopened Newports, two one-dollar bills, and a tee-shirt. When the items were processed for fingerprints, a thumbprint located on the cigarette pack was matched to [Petitioner].

The police obtained an arrest warrant for [Petitioner] and arrested him on September 27, 2012, after tracking him to his sister's apartment in Dover. Before executing the arrest warrant, the police made contact with [Petitioner's] sister, Lutricia Ingram, who confirmed that [Petitioner] was inside her apartment. [Petitioner] put up a fight when the police entered the apartment to arrest him. When struggling with the police, [Petitioner] made repeated attempts to reach for a gun under the couch. After [Petitioner] was subdued and taken into custody, Lutricia Ingram gave the police written consent to search the apartment.

*Ingram v. State*, 106 A.3d 1049 (Table), 2014 WL 7465977, at *1 (Del. Dec. 30, 2014).

On November 25, 2013, a Superior Court jury found Petitioner guilty of all charges in the C Case – two counts of first degree robbery, and one count each of PFDCF, second degree conspiracy, and resisting arrest.  (D.I. 22-2 at Entry No. 11); *Ingram*, 2014 WL 7465977, at *2.  The Superior Court sentenced Petitioner as a habitual offender on January 30, 2014 to "a total of seventy-eight years at Level V suspended after seventy-five years for one year at Level II probation and one year at Level I probation." *Ingram*, 2014 WL 7465977, at *2.  On direct appeal, Petitioner's defense counsel filed a no-merits brief pursuant to Delaware Supreme Court Rule 26(c), but submitted several arguments on Petitioner's behalf.  The Delaware Supreme Court affirmed Petitioner's convictions on December 30, 2014.  *Id.* at *3.

4

On May 5, 2015, Petitioner field a *pro se* motion for postconviction relief pursuant to Delaware Superior Court Criminal Rule 61 ("Rule 61 motion") and a motion to appoint counsel. (D.I. 22-2 at Entry Nos. 31, 32)  The Superior Court appointed counsel to represent Petitioner in his Rule 61 proceeding.  Appointed counsel filed an amended Rule 61 motion asserting the following three ineffective assistance of trial counsel claims: (1) trial counsel erred by not moving to sever the resisting arrest charge from the C Case; (2) trial counsel erred by not objecting to Detective Bumgarner's testimony during trial; and (3) trial counsel erred by not opposing a jury instruction on flight. (D.I. 22-20 at 53-90)  In June 2018, a Superior Court Commissioner recommended that the amended Rule 61 motion be denied.  *See Ingram*, 2018 WL 3459209, at *6.  Petitioner filed objections to the Commissioner's Report and Recommendation (D.I. 22-2 at Entry No. 56).  In September 2019, the Superior Court rejected Petitioner's objections, adopted the Report and Recommendation, and denied Petitioner's amended Rule 61 motion. (D.I. 22-2, at Entry No. 60)  The Delaware Supreme Court affirmed that decision in June 2019.  *See Ingram v. State*, 2019 WL 2537735, at *1 (Del. June 19, 2019).

### B. The D Case: September 27, 2012 PFBPP Charge

Petitioner's trial on his September 27, 2012 PFBPP charge began on May 5, 2014, and a Superior Court jury found him guilty of the offense on May 6, 2014.  (D.I. 22-3 at Entry Nos. 4, 6)  On August 13, 2014, the Superior Court sentenced Petitioner as a habitual offender to "twenty-five years mandatory at Level V incarceration followed by one year at Level III probation*." Ingram*, 2015 WL 631581, at *1.  On direct appeal, Petitioner's defense counsel filed a no-merits brief pursuant to Delaware Supreme Court

Rule 26(c) ("Rule 26(c)"), but presented three arguments on Petitioner's behalf. The Delaware Supreme Court affirmed Petitioner's conviction. *See id.* at *3.

On June 3, 2015, Petitioner filed a *pro se* Rule 61 motion and a motion to appoint counsel. (D.I. 22-2 at Entry Nos. 19, 20)  The Superior Court granted the motion for the appointment of counsel.  On April 17, 2017, appointed counsel filed an amended Rule 61 motion asserting that defense counsel was ineffective for: (1) failing to present a DNA report that could not conclusively link Petitioner to the recovered firearm; and (2) failing to present testimony that Petitioner's fingerprints were not found on the recovered firearm.  (D.I. 22-2 at Entry Nos. 21, 32; D.I. 22-27, at 74-94)  In  June 2018, a Superior Court Commissioner recommended that the amended Rule 61 motion be denied.  *See State v. Ingram*, 2018 WL 3126096, at *10 (Del. Super. Ct. Jun. 21, 2018).  Petitioner filed objections to the Recommendation and Report.  (D.I. 22-2 Entry No. 41; D.I. 22-28 at 136-140)  The Superior Court rejected Petitioner's objections, adopted the Report and Recommendation, and denied the amended Rule 61 motion on September 25, 2018.  (D.I. 22-2 at Entry No. 45)  The Delaware Supreme Court affirmed that decision on June 19, 2019.  *See Ingram v. State*, 2019 WL 2537627, at *1  (Del. June 19, 2019).

### C. Habeas Petitions

Petitioner timely filed his original Petition and Memorandum of Law in November 2019 challenging his conviction for PFBPP in the D Case, asserting three Claims: (1) the trial court violated his Fourth Amendment rights by failing to suppress the evidence illegally seized during his September 27, 2012 arrest; (2) his due process rights were violated during trial because the State did not meet its burden of proof; and (3) defense counsel provided ineffective assistance by failing to present a DNA report that did not

conclusively link Petitioner to the gun, and by failing to present testimony that Petitioner's fingerprints were not on the gun. (D.I. 2; D.I. 2-2)

Petitioner filed a second Petition and Memorandum of Law in December 2019 challenging his conviction for the charges related to the September 4, 2012 robbery and his September 27, 2012 arrest in the C Case, asserting three Claims: (1) the trial court violated his Fourth Amendment rights by failing to suppress the evidence illegally seized during his September 27, 2012 arrest; (2) his due process rights were violated by the State's failure to authenticate the gun in accordance with Delaware Rule of Evidence 901, and by the State's failure to demonstrate the gun was "relevant" under Delaware Rules of Evidence 401, 402, 404; and (3) defense counsel provided ineffective assistance by failing to file a motion to sever the resisting arrest charge, by failing to object to the police officers' testimony, and by failing to object to a flight instruction. (D.I. 9; D.I. 10)

Although the Petitions challenge separate convictions, they involve a common question of law and fact and raise at least one identical ground for relief. Therefore, the Court will consider both Petitions in this proceeding. *See* Fed. R. Civ. P. 42(a)(2).

## II. GOVERNING LEGAL PRINCIPLES

### A. The Antiterrorism and Effective Death Penalty Act of 1996

Congress enacted the Antiterrorism and Effective Death Penalty Act of 1996 (AEDPA) "to reduce delays in the execution of state and federal criminal sentences . . . and to further the principles of comity, finality, and federalism." *Woodford v. Garceau*, 538 U.S. 202, 206 (2003). Pursuant to AEDPA, a federal court may consider a habeas petition filed by a state prisoner only "on the ground that he is in custody in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2254(a).

Additionally, AEDPA imposes procedural requirements and standards for analyzing the merits of a habeas petition in order to "prevent federal habeas 'retrials' and to ensure that state-court convictions are given effect to the extent possible under law." *Bell v. Cone*, 535 U.S. 685, 693 (2002).

## B. Exhaustion and Procedural Default

Absent exceptional circumstances, a federal court cannot grant habeas relief unless the petitioner has exhausted all means of available relief under state law. *See* 28 U.S.C. § 2254(b); *O'Sullivan v. Boerckel*, 526 U.S. 838, 842-44 (1999); *Picard v. Connor*, 404 U.S. 270, 275 (1971). AEDPA states, in pertinent part:

> An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted unless it appears that –
>
> (A) the applicant has exhausted the remedies available in the courts of the State; or
>
> (B)(i) there is an absence of available State corrective process; or (ii) circumstances exist that render such process ineffective to protect the rights of the applicant.

28 U.S.C. § 2254(b)(1). This exhaustion requirement, based on principles of comity, gives "state courts one full opportunity to resolve any constitutional issues by invoking one complete round of the State's established appellate review process." *O'Sullivan*, 526 U.S. at 844-45; *see Werts v. Vaughn*, 228 F.3d 178, 192 (3d Cir. 2000).

A petitioner satisfies the exhaustion requirement by demonstrating that the habeas claims were "fairly presented" to the state's highest court, either on direct appeal or in a post-conviction proceeding, in a procedural manner permitting the court to consider the claims on their merits. *See Bell v. Cone*, 543 U.S. 447, 451 n.3 (2005); *Castille v. Peoples,* 489 U.S. 346, 351 (1989). If the petitioner raised the issue on direct

8

appeal in the correct procedural manner, the claim is exhausted and the petitioner does not need to raise the same issue again in a state post-conviction proceeding.  *See Lambert v. Blackwell,* 134 F.3d 506, 513 (3d Cir. 1997).

If a petitioner presents unexhausted habeas claims to a federal court, and further state court review of those claims is barred due to state procedural rules, the federal court will excuse the failure to exhaust and treat the claims as exhausted.  *See Coleman v. Thompson*, 501 U.S. 722, 732, 750-51 (1991) (such claims "meet[] the technical requirements for exhaustion" because state remedies are no longer available); *see also Woodford v. Ngo*, 548 U.S. 81, 92-93 (2006).  Such claims, however, are procedurally defaulted.  *See Coleman*, 501 U.S. at 749; *Lines v. Larkins*, 208 F.3d 153, 160 (3d Cir. 2000).  Similarly, if a petitioner presents a habeas claim to the state's highest court, but that court "clearly and expressly" refuses to review the merits of the claim due to an independent and adequate state procedural rule, the claim is exhausted but procedurally defaulted.  *See Coleman*, 501 U.S. at 750*; Harris v. Reed*, 489 U.S. 255, 260-64 (1989).

Federal courts may not consider the merits of procedurally defaulted claims unless the petitioner demonstrates either cause for the procedural default and actual prejudice resulting therefrom, or that a fundamental miscarriage of justice will result if the court does not review the claims.  *See McCandless v. Vaughn,* 172 F.3d 255, 260 (3d Cir. 1999); *Coleman,* 501 U.S. at 750-51.  To demonstrate cause for a procedural default, a petitioner must show that "some objective factor external to the defense impeded counsel's efforts to comply with the State's procedural rule."  *Murray v. Carrier*, 477 U.S. 478, 488 (1986).  To demonstrate actual prejudice, a petitioner must show that

9

the errors during his trial created more than a possibility of prejudice; he must show that the errors worked to his actual and substantial disadvantage, infecting his entire trial with error of constitutional dimensions." *Id.* at 494.

Alternatively, if a petitioner demonstrates that a "constitutional violation has probably resulted in the conviction of one who is actually innocent,"[2] then a federal court can excuse the procedural default and review the claim in order to prevent a fundamental miscarriage of justice. *See Edwards v. Carpenter*, 529 U.S. 446, 451 (2000); *Wenger v. Frank*, 266 F.3d 218, 224 (3d Cir. 2001). The miscarriage of justice exception applies only in extraordinary cases, and actual innocence means factual innocence, not legal insufficiency. *See Bousley v. United States*, 523 U.S. 614, 623 (1998); *Murray*, 477 U.S. at 496. A petitioner establishes actual innocence by asserting "new reliable evidence—whether it be exculpatory scientific evidence, trustworthy eyewitness accounts, or critical physical evidence—that was not presented at trial," showing that no reasonable juror would have voted to find the petitioner guilty beyond a reasonable doubt. *Hubbard v. Pinchak*, 378 F.3d 333, 339-40 (3d Cir. 2004).

### C. Standard of Review

If a state's highest court adjudicated a federal habeas claim on the merits, the federal court must review the claim under the deferential standard contained in 28 U.S.C. § 2254(d). Pursuant to § 2254(d), federal habeas relief may only be granted if the state court's decision was "contrary to, or involved an unreasonable application of, clearly established federal law, as determined by the Supreme Court of the United States," or the state court's decision was an unreasonable determination of the facts

---

[2] *Murray*, 477 U.S. at 496.

based on the evidence adduced in the trial. § 2254(d)(1) & (2); *see also Williams v. Taylor*, 529 U.S. 362, 412 (2000); *Appel v. Horn*, 250 F.3d 203, 210 (3d Cir. 2001). A claim has been "adjudicated on the merits" for the purposes of § 2254(d) if the state court decision finally resolves the claim on the basis of its substance, rather than on a procedural or some other ground. *See Thomas v. Horn*, 570 F.3d 105, 115 (3d Cir. 2009). The deferential standard of § 2254(d) applies even "when a state court's order is unaccompanied by an opinion explaining the reasons relief has been denied." *Harrington v. Richter*, 562 U.S. 86, 98 (2011). As explained by the Supreme Court, "it may be presumed that the state court adjudicated the claim on the merits in the absence of any indication or state-law procedural principles to the contrary." *Id.* at 99.

Finally, when reviewing a habeas claim, a federal court must presume that the state court's determinations of factual issues are correct. *See* § 2254(e)(1). This presumption of correctness applies to both explicit and implicit findings of fact, and is only rebutted by clear and convincing evidence to the contrary. *See* § 2254(e)(1); *Campbell v. Vaughn*, 209 F.3d 280, 286 (3d Cir. 2000); *Miller-El v. Cockrell*, 537 U.S. 322, 341 (2003) (stating that the clear and convincing standard in § 2254(e)(1) applies to factual issues, whereas the unreasonable application standard of § 2254(d)(2) applies to factual decisions).

## III.   DISCUSSION

### A.   Claim One:  Violation Of Petitioner's Fourth Amendment Rights

In Claim One, Petitioner contends that his Fourth Amendment rights were violated in both the C and D Cases because the State "used illegally obtain[ed] evidence in [his] trial and [the] evidence should have been suppressed." (D.I. 2 at 5; D.I. 2-1 at 2; D.I. 9 at 5; D.I. 10 at 2)  Petitioner argues that the police illegally detained his

11

sister "by placing her in handcuffs upon contact" after illegally entering her residence "without a warrant, without justification, without valid consent." (D.I. 3 at 4; D.I. 10 at 4) He argues that "any and all evidence and contraband located inside the residence" should have been suppressed for being "fruit of the poisonous tree." (D.I. 3 at 4; D.I. 10 at 4) For the following reasons, the Court concludes that Claim One does not warrant relief.

Pursuant to *Stone v. Powell*, 428 U.S. 465, 494 (1976), a federal habeas court cannot review a Fourth Amendment claim if the petitioner had a full and fair opportunity to litigate the claim in the state courts. *Id.*; *see also Wright v. West*, 505 U.S. 277, 293 (1992). A petitioner is considered to have had a full and fair opportunity to litigate such claims if the state has an available mechanism for suppressing evidence seized in or tainted by an illegal search or seizure, irrespective of whether the petitioner actually availed himself of that mechanism. *See U.S. ex rel. Hickey v. Jeffes,* 571 F.2d 762, 766 (3d. Cir. 1980); *Boyd v. Mintz,* 631 F.2d 247, 250 (3d Cir. 1980). Conversely, a petitioner has not had a full and fair opportunity to litigate a Fourth Amendment claim, and therefore, avoids the *Stone* bar, if the state system contains a structural defect that prevented the state court from fully and fairly hearing that Fourth Amendment argument. *Marshall v. Hendricks*, 307 F.3d 36, 82 (3d Cir. 2002). Significantly, "an erroneous or summary resolution by a state court of a Fourth Amendment claim does not overcome the [*Stone*] bar." *Id.*

In this case, Petitioner filed a pre-trial motion to suppress the evidence obtained from his sister's residence pursuant to Rule 41 of the Delaware Superior Court Rules of Criminal Procedure (D.I. 22-5 at 54-58), and the Superior Court denied that motion after

12

conducting a hearing.  (D.I. 22-5 at 105-109)  Petitioner then challenged that decision in his direct appeals of both the C and D Cases to the Delaware Supreme Court, presenting the same argument raised here.  The Delaware Supreme Court in the C Case found "[t]o the extent [Petitioner] challenges . . . the validity of Lutricia Ingram's consent on appeal, those claims were raised and rejected at trial and are without merit." *Ingram*, 2014 7465977, at *3.  When addressing Petitioner's instant Fourth Amendment argument in the D Case, the Delaware Supreme Court referenced its earlier order affirming Petitioner's convictions in the C case, and concluded, "having previously considered [Petitioner's] direct challenge to the validity of his sister's consent and denied the claim as without merit, the Court concludes that the same claim raised in this appeal is moot."  *Ingram*, 2015 WL 631581, at *3.

    This record clearly demonstrates that Petitioner was afforded a full and fair opportunity to litigate his Fourth Amendment Claim for both the C and D Cases in the Delaware state courts.  The fact that Petitioner disagrees with these decisions and/or the reasoning utilized therein is insufficient to overcome the *Stone* bar.  Therefore, the Court will deny Petitioner's Fourth Amendment argument as barred by *Stone*.

### B.  Claim Two: Insufficient Evidence In Case D (PFBPP)

    In Claim Two, Petitioner contends that his right to due process was violated during the trial in Case D "when the State did not meet its burden of proof, [because t]he State . . . [relied] on the testimony of two officers [who] didn't witness the weapon in question until after [Petitioner] was in custody."  (D.I. 2-1 at 2)  Specifically, Petitioner argues that the State failed to prove beyond a reasonable doubt that he was in constructive possession of the weapon on the day of his arrest, September 27, 2012.

(D.I. 2-1 at 4)  The Delaware Supreme Court rejected this argument as meritless in Petitioner's direct appeal of the D Case.  Therefore, Petitioner will only be entitled to relief if the Delaware Supreme Court's denial of Claim Two was either contrary to, or based on an unreasonable application of, United States Supreme Court precedent.

The clearly established federal law governing Petitioner's insufficient evidence argument is the rule articulated by the United States Supreme Court in *Jackson v. Virginia*, 443 U.S. 307 (1979).  Pursuant to *Jackso*n, "the relevant question is whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Id*. at 319.  This standard "must be applied with explicit reference to the substantive elements of the criminal offense as defined by state law." *Id*. at 324 n.16. Additionally, "a federal habeas court faced with a record of historical facts that supports conflicting inferences must presume – even if it does not affirmatively appear in the record – that the trier of fact resolved any such conflicts in favor of the prosecution, and must defer to that resolution." *Id*. at 326; *see also Gov't of Virgin Islands v. Isaac*, 50 F.3d 1175, 1179 (3d Cir. 1995).  Reviewing courts cannot make their own credibility determinations when evaluating the sufficiency of the evidence.  *See United States v. Giampa*, 758 F.2d 928, 934-35 (3d Cir. 1985).  Finally, "it is not necessary that the evidence exclude every reasonable hypothesis except that of guilt." *Jackson*, 443 U.S. at 326.

Here, although the Delaware Supreme Court did not cite to *Jackson* when it denied the instant Claim, it relied on Delaware caselaw articulating the *Jackson* standard applicable to such claims. *See Fahy v. Horn*, 516 F.3d 169, 196 (3d Cir. 2008)

14

(Supreme Court of Pennsylvania's decision was not "contrary to" clearly established federal law because it appropriately relied on its own state court cases which articulated the proper standard derived from Supreme Court precedent).  Thus, the Delaware Supreme Court's decision is not contrary to clearly established law.

In addition, the Delaware Supreme Court reasonably applied *Jackson* to the facts of Petitioner's case.  At the conclusion of the trial in the D Case, Petitioner moved for a judgment of acquittal on the PFBPP charge.  (D.I. 22-13, at 191)  Defense counsel argued that there was no evidence that Petitioner actually or constructively possessed the gun, given the lack of evidence that Petitioner was even aware of the loaded handgun under the couch.  (*Id.*)  The Superior Court denied the motion.  (*Id.*)  On direct appeal, the Delaware Supreme Court found the evidence was sufficient to convict Petitioner of PFBPP, determining that "[t]wo police officers testified that, when struggling with them in the living room of his sister's apartment on September 27, Petitioner made repeated attempts to reach under the couch in an area where the police officer later discovered a loaded handgun."  *Ingram*, 2015 WL 631581, at *2.

In Delaware, to "prove constructive possession of a gun, the State must show that the defendant: (i) knew the location of the gun; (ii) had the ability to exercise dominion and control over the gun; and (iii) intended to exercise dominion and control over the gun."  *Triplett v. State*, 2014 WL 1888414, at *2 (Del. May 9, 2014); *Lecates v. State*, 987 A.2d 413, 426 (Del. 2009).  When determining if there was sufficient evidence, the Delaware Supreme Court does not distinguish between direct and circumstantial evidence.  *See Lum v. State*, 101 A.3d 970, 971 (Del. 2014).

15

In this case, the jury was presented with evidence that Petitioner was a person prohibited, he was alone in the apartment during the encounter with police, the police officers witnessed Petitioner repeatedly reaching under the couch, and a loaded gun was immediately found under that same couch once the officers had Petitioner in custody. After viewing the totality of the evidence and the reasonable inferences drawn from that evidence in a light most favorable to the State, the Court concludes that the Delaware Supreme Court reasonably applied *Jackson* when holding that a reasonable trier of fact could find there was sufficient evidence of constructive possession to find Petitioner guilty of PFBPP. Therefore, Claim Two does not warrant relief under § 2254(d).

### C. Claim Three: Evidentiary Violations In The C Case (Robbery and Resisting Arrest) Deprived Petitioner Of His Due Process Rights

Next, Petitioner contends that the State committed two evidentiary errors during his trial in the C Case that "[v]iolated [his] constitutional right to a fair trial and a right to Due Process." (D.I. 10 at 11-12) Specifically, he complains that the State failed to authenticate the gun as required by Delaware Rule of Evidence 901 and the State failed to comply with Delaware Rules of Evidence 401, 402, and 403 when admitting the pack of Newport cigarettes containing his thumbprint.

The Supreme Court has repeatedly held that "it is not the province of a federal habeas court to reexamine state-court determinations on state law questions." *Estelle v. McGuire*, 502 U.S. 62, 68 (1991). The "admissibility of evidence is a state law issue,"[3] and state evidentiary errors are not cognizable in a federal habeas corpus

---

[3] *Wilson v. Vaughn*, 533 F.3d 208, 213 (3d Cir. 2008).

proceeding unless the error deprived the petitioner of fundamental fairness in his criminal trial.  *See Donnelly v. DeChristoforo*, 416 U.S. 637, 642-43 (1974).

Although Claim Two briefly asserts that the admission of the gun violated Petitioner's right to due process, the clear thrust of the instant Claim is that the Superior Court erroneously applied Delaware evidentiary rules when admitting the gun as evidence.  Thus, the Court concludes that Claim Three is not cognizable in this proceeding.

Even if Claim Three were cognizable, the Claim is procedurally barred from habeas review due to Petitioner's failure to satisfy the "fair presentation" requirement of the exhaustion doctrine.  A federal legal claim is "fairly presented" to state courts when there is: (1) reliance in the state courts on pertinent federal cases employing constitutional analysis; (2) reliance on state cases employing constitutional analysis in like fact situations; (3) assertion of the claim in terms so particular as to call to mind a specific right protected by the Constitution; and (4) allegation of a pattern of facts that is well within the mainstream of constitutional litigation.  *See McCandless*, 172 F.3d at 261.  As explained by the Supreme Court, "if a habeas petitioner wishes to claim that an evidentiary ruling at a state court trial denied him the due process of law guaranteed by the Fourteenth Amendment, he must say so, not only in federal court, but in state court." *Duncan v. Henry*, 513 U.S. 364, 366 (1995).

The record reveals that Petitioner presented his arguments in Claim Three to the Delaware Supreme Court on direct appeal of the C Case purely as errors of Delaware evidentiary law and not as a violation of his due process rights.  (*See* D.I. 22-4 at 32-36, 42); *Ingram*, 2014 WL 7465977, at *2-3.  While Petitioner's failure to frame his argument

17

with the explicit phrase "due process" is not necessarily determinative of this inquiry, Petitioner did not reference any federal constitutional principle or law, refer to any case interpreting federal constitutional law, or present his argument in terms bringing to mind a violation of due process. The fact that the Delaware Supreme Court also viewed Petitioner's argument as alleging that the trial court erred in its "evidentiary rulings" provides additional support for the Court's conclusion that Petitioner did not "fairly present" a due process violation on direct appeal. *See Ingram*, 2014 WL 7465977, at \*2. In turn, Petitioner did not present a violation of due process argument based on any alleged evidentiary errors in his amended Rule 61 motion or post-conviction appeal in the C Case. Given this record, the Court concludes that the Petitioner did not exhaust state remedies for Claim Three because he did not fairly present the Claim to the Delaware Supreme Court as a federal due process issue.

At this point in time, Petitioner cannot return to the Delaware state courts in an effort to seek further relief because any attempt to file a new Rule 61 motion would be denied as time-barred under Rule 61(i)(1), successive under Rule 61(i)(2), and defaulted under Rule 61(i)(3). *See* Del. Super. Ct. Crim. R. 61(1), (2), (3). Therefore, Claim Three is procedurally defaulted, meaning that the Court cannot review the Claim's merits absent a showing of cause and prejudice, or that fundamental miscarriage of justice will result absent such review.

Petitioner attempts to establish cause for his default of Claim Three by blaming post-conviction counsel for not including the Claim in the amended Rule 61 motion and on post-conviction appeal. (D.I. 26 at 3-5) To the extent Petitioner premises his attempt to establish cause under *Martinez v. Ryan*, 566 U.S. 1 (2012), the argument is

18

unavailing.  In *Martinez*, the Supreme Court held that inadequate assistance of counsel during an initial-review state collateral proceeding may establish cause for a petitioner's procedural default of a claim of ineffective assistance of trial counsel.  *Id*. at 16-17.  In order to obtain relief under *Martinez*, a petitioner must demonstrate that: (1) the defaulted ineffective assistance of trial counsel claim is substantial; and (2) the post-conviction attorney in his first state collateral proceeding was ineffective under the standards established in *Strickland*.  *See Workman v. Sup't Albion SCI*, 915 F.3d 928, 937 (3d Cir. 2019).  Here, however, Claim Three asserts an alleged due process/state evidentiary violation, not an argument that trial counsel provided ineffective assistance. Therefore, *Martinez* does not provide an avenue for Petitioner to establish cause for his default of the instant Claim.

In the absence of cause, the Court will not address the issue of prejudice. Additionally, Petitioner has not satisfied the miscarriage of justice exception to the procedural default doctrine because he has not provided new reliable evidence of his actual innocence.  Accordingly, to the extent it is cognizable, the Court will deny Claim Three as procedurally barred.

### D.  Claim Four:  Ineffective Assistance of Counsel

In Claim Four, Petitioner contends that defense counsel provided ineffective assistance in both the C and D Cases, and presents his ineffective assistance arguments by appending his Rule 61 pleadings to his Petitions.  The Superior Court denied Petitioner's ineffective assistance of counsel arguments, and the Delaware Supreme Court affirmed those decisions.  *See Ingram*, 2019 WL 2537735, at *1 (C Case); *Ingram,* 2019 WL 2537627, at *1 (D Case).  Given these circumstances,

19

Petitioner will only be entitled to relief on his ineffective assistance of counsel allegations if the Delaware Supreme Court decisions in the C and D Cases were either contrary to, or an unreasonable application of, clearly established federal law.

The clearly established Supreme Court precedent governing ineffective assistance of counsel claims is the two-pronged standard enunciated by *Strickland v. Washington*, 466 U.S. 668 (1984) and its progeny. *See Wiggins v. Smith*, 539 U.S. 510 (2003). Under the first *Strickland* prong, a petitioner must demonstrate that "counsel's representation fell below an objective standard of reasonableness," with reasonableness being judged under professional norms prevailing at the time counsel rendered assistance. *Strickland*, 466 U.S. at 688. Under the second *Strickland* prong, a petitioner must demonstrate "there is a reasonable probability that, but for counsel's error the result would have been different." *Id.* at 687-96. A reasonable probability is a "probability sufficient to undermine confidence in the outcome." *Id.* at 688. A court may choose to address the prejudice prong before the deficient performance prong, and may reject an ineffectiveness claim solely on the ground that the movant was not prejudiced. *See Strickland*, 466 U.S. at 668. Although not insurmountable, the *Strickland* standard is highly demanding and leads to a strong presumption that counsel's representation was professionally reasonable. *See id.* at 689.

Turning to the first prong of the § 2254(d)(1) inquiry, the Court notes that the Delaware Supreme Court correctly identified the *Strickland* standard as governing Petitioner's instant ineffective assistance of counsel contentions. As a result, the Delaware Supreme Court's decisions were not contrary to clearly established federal law.

20

The Court must also determine if the Delaware Supreme Court reasonably applied the *Strickland* standard to the facts of Petitioner's case. *See Harrington*, 562 U.S. at 105-06. When performing this inquiry, the Court must review the Delaware Supreme Court's denial of Petitioner's ineffective assistance of counsel allegation through a "doubly deferential" lens. *Id.* "[T]he question is not whether counsel's actions were reasonable, [but rather], whether there is any reasonable argument that counsel satisfied *Strickland*'s deferential standard." *Id.* When assessing prejudice under *Strickland*, the question is "whether it is reasonably likely the result would have been different" but for counsel's performance, and the "likelihood of a different result must be substantial, not just conceivable." *Id.* And finally, when viewing a state court's determination that a *Strickland* claim lacks merit through the lens of § 2254(d), federal habeas relief is precluded "so long as fairminded jurists could disagree on the correctness of the state court's decision." *Id.* at 101.

### 1. The C Case

With respect to the C Case (Robbery and Resisting Arrest), Petitioner asserts that defense counsel was ineffective for: "(1) not moving to sever the resisting-arrest charge from the charges that related to the robbery, (2) not objecting to testimony from the arresting officer at trial that he recognized [Petitioner] and that it was difficult to arrest [Petitioner], and (3) not objecting to a flight instruction." *Ingram*, 2019 WL 2537735, at *1; (D.I. 10 at 32-49; D.I. 22-20 at 72-90) The Superior Court held that defense counsel did not provide ineffective assistance, opining:

> [E]ven if a motion to sever the Resisting arrest charge had been made there was, as noted by the State, sufficient evidentiary value in the testimony concerning [Petitioner's] actions during his arrest and the finding of a loaded weapon

21

that matched the description of the weapon used in the Robbery, that the evidence would have been admitted at the trial because it was relevant. Furthermore, I find that there was no prejudice due to the strong evidence linking [Petitioner] to the crime. His fingerprints on the cigarette pack found along the path the suspect with the contraband fled is compelling to say the least. Consequently, the testimony concerning the arrest was relevant and outweighed any potential prejudice to Ingram. The charges were properly joined.

I further find Trial Counsel was not ineffective for failing to object to various lines of questioning. As noted in the amended brief, Trial Counsel, during trial chose not to object due to the tactical reasons. Under the circumstances of the case I find his actions reasonable. Furthermore, I do not find that the lack of objection prejudiced Ingram given the weight of evidence against him.

Finally turning to the allegation that Trial Counsel should have opposed a flight instruction, I find this ground meritless. The record clearly shows that there was sufficient evidence presented during the trial to warrant a flight instruction. Consequently there was no prejudice to Ingram.

*Ingram*, 2018 WL 3459209, at *5–6. The Delaware Supreme Court affirmed the

Superior Court's denial of the instant ineffective assistance arguments, opining:

[Petitioner] has not demonstrated that either the failure to move to sever [the resisting arrest charge] or the failure to object to the arresting officer's testimony was prejudicial to his defense. In particular, [Petitioner] did not show that it is likely that a court would have excluded significant portions of the arrest evidence from a severed trial on the robbery charges or that the arresting officer's testimony weighed significantly upon the jury's verdict. Nor did [Petitioner] convincingly explain why a flight instruction was unwarranted given that it was undisputed that the robbery suspects fled down a bike path and that police found a pack of unopened Newport cigarettes—with [Petitioner's] fingerprint—along that bike path. Given all that, we cannot conclude that "there was reasonable probability that, but for counsel's [alleged] unprofessional errors, the result of the proceeding would have been different.

22

> Also, [Petitioner] has not shown that trial counsel's failure to object to the arresting officer's testimony "fell below an objective standard of reasonableness." To be sure, the arresting officer's testimony that, when he entered the apartment where he arrested [Petitioner], he immediately recognized [Petitioner] might have led the jury to infer that [Petitioner] had prior police contacts. But that is not the only inference to be drawn, and even if it were, [Petitioner] has not explained why trial counsel's failure to object was not a reasonable trial strategy that sought to avoid drawing "unwarranted attention" to potentially damaging testimony.

*Ingram*, 2019 WL 2537735, at *1 (cleaned up).

The Delaware state courts did not unreasonably apply *Strickland* when denying Petitioner's ineffective assistance of counsel arguments concerning the C Case. With respect to defense counsel's failure to pursue severance of the resisting arrest charge, the record supports the Superior Court's explicit finding, and the Delaware Supreme Court's implicit finding, that Petitioner's fingerprint on the pack of cigarettes found with the other items stolen during the robbery constituted "strong evidence linking" Petitioner to the robbery. *See Ingram*, 2018 WL 3459209, at *5; *Ingram*, 2019 WL 2537735, at *1. Consequently, the testimony regarding Petitioner's resisting arrest conduct on September 27, 2012 would have been relevant and admissible at a severed trial on the robbery charges. *See, e.g., McKinney v. State*, 466 A.2d 356, 359 (Del. 1983) ("Under a plea of not guilty, any conduct of the defendant subsequent to the commission of the crime, that tends to show consciousness of guilt, is relevant.) Thus, the Delaware Supreme Court reasonably applied *Strickland* when concluding Petitioner failed to demonstrate a reasonable probability that the result of his trial in the C Case would have been different but for defense counsel's failure to file a motion to sever because he "did not show that it is likely that a court would have excluded significant portions of

23

the arrest evidence from a severed trial on the robbery charges." *Ingram*, 2019 WL 2537735, at *1.

Petitioner's contention regarding defense counsel's failure to oppose the flight instruction is similarly unavailing. Under Delaware state law, "[t]he trial court may instruct the jury on defendant's flight where the record contains evidence of flight or concealment and the evidence reasonably supports the inference that defendant fled because of a consciousness of guilt and a desire to avoid accusation thereon." *Daniels v. State*, 703 A.2d 643 (Table), 1997 WL 776202, at *3 (Del. Dec. 4, 1997).  Here, Petitioner contends that the flight instruction was improper because "there was no evidence presented at trial that identified [Petitioner] at the scene or fleeing from the scene." (D.I. 10 at 47; D.I. 22-20 at 86)  In rejecting that argument and determining that the flight instruction was warranted both the Superior Court and the Delaware Supreme Court expressly relied on the record, which included the following evidence: (1) the police saw three individuals fitting the description from the 911 call fleeing the scene shortly after the robbery (D.I. 22-5 at 316-317); (2) two of the three suspects were apprehended within minutes of the robbery; (3) Petitioner's thumbprint was found on an unopened pack of Newport cigarettes on the same path where the police apprehended the other two suspects; and (4) packs of Newport cigarettes were part of the items stolen from the store.  *See Ingram*, 2019 WL 2537735, at *1; *see also Ingram*, 2018 WL 3459209, at *5-*6.  This evidence demonstrates the reasonableness of the Delaware state courts' determination that a flight instruction was warranted.  Consequently, Petitioner cannot establish a reasonable probability that an objection would have been

granted and, therefore, cannot demonstrate a reasonable probability of a different outcome had defense counsel opposed the flight instruction.

The Court also concludes that Petitioner's complaint about defense counsel's failure to object to Detective Bumgarner's testimony does not warrant relief.   When rejecting Petitioner's contention that defense counsel was ineffective for failing to object to Detective Bumgarner's testimony that he recognized Petitioner upon entering the apartment (D.I. 29-19 at 28) and that Petitioner's conduct during the arrest was worse than that of other individuals the detective had arrested, (D.I. 29-19 at 56), the Superior Court noted that, "during trial, [defense counsel] chose not to object due to tactical reasons." *Ingram*, 2018 WL 3459209, at *5.  In affirming that decision, the Delaware Supreme Court pointed to Petitioner's failure to "explain[] why trial counsel's failure to object was not a reasonable trial strategy that sought to avoid drawing 'unwarranted attention' to potentially damaging testimony." *Ingram*, 2019 WL 2537735, at *1.  The Delaware Supreme Court's reference to defense counsel's "tactical reasons" is based on an entry the trial judge put on the record after a sidebar regarding Detective Bumgarner's testimony:

> [During[ the redirect of a witness, there was a string of leading questions.  It was not objected to.  Then, at the close of that, [defense counsel asked about something, but because there was no objection, there would be no instruction to the jury to disregard them.  I did offer defense counsel to state something on the record in the presence of the jury, but chose as a tactical matter not to.

(D.I. 22-19 at 74-75)  Defense counsel's Rule 61 affidavit does not provide any reason for counsel's failure to object.  (*See* D.I. 22-20 at 91-92).

25

Under *Strickland*, counsel is entitled to a strong presumption that his conduct was within the range of "reasonable professional assistance"[4] and, "where, as here, the record is silent as to counsel's strategy or lack thereof, the defendant bears the burden of proving that no sound strategy offered by the [State] would have supported the conduct." *Lewis v. Horn*, 581 F.3d 92, 114 (3d Cir. 2009). The Delaware Supreme Court concluded that defense counsel's failure to object to Detective Bumgarner's testimony did not amount to deficient performance because Petitioner failed to rebut the *Strickland* presumption that trial counsel's failure to object may have been "a reasonable trial strategy that sought to avoid drawing unwarranted attention to potentially damaging testimony." *Ingram*, 2019 WL 2537735, at *1 (cleaned up). Given Petitioner's failure to provide any evidence to rebut the *Strickland* presumption that the challenged action might be considered sound trial strategy, the Court will deny the instant ineffective assistance contention for failing to satisfy § 2254(d).

### 2. The D Case

With respect to the D Case (PFBPP on day of arrest), Petitioner contends that defense counsel provided ineffective assistance by not calling a police officer to testify that he had processed the firearm for fingerprints and had found none, and by failing to present the results of the DNA test from the Office of the Chief Medical Examiner ("OCME") to show there was no link between the gun and Petitioner. Petitioner presented the instant two arguments in his Rule 61 motion, asserting that these pieces of evidence – which were well-known to counsel due to counsel's representation of

---

[4] *Strickland*, 466 U.S. at 689.

Petitioner in the C Case[5] – would have "create[d] reasonable doubt as to whether [Petitioner] had the power and the intention to exercise control over the firearm under the couch." (D.I. 2-2 at 16-20; D.I. 22-27 at 88)

As both the Superior Court and Delaware Supreme Court explained when rejecting these ineffective assistance arguments in Petitioner's Rule 61 proceeding, since Petitioner stipulated that he was person prohibited from possessing a firearm on September 27, 2012, the only issue before the jury was whether there was proof beyond a reasonable doubt that Petitioner either had actual or constructive possession of the firearm. *See Ingram*, 2018 WL 3126096, at *9; *Ingram*, 2019 WL 2537627, at *1. Both state courts concluded that Petitioner could not demonstrate a reasonable probability that a jury would have acquitted Petitioner even if it had heard the evidence about the lack of Petitioner's DNA and fingerprints on the gun because of credible testimony concerning Petitioner's constructive possession provided by two police officers who were involved in Petitioner's arrest on September 27, 2012. *See Ingram*, 2018 WL 3126096, at *3-*8, *9-*10.

The Court begins its analysis of Petitioner's instant contention by reviewing the relevant testimony from Petitioner's D Case. Detective Bumgarner testified that: (1) he was the first person to enter the apartment and, when he drew his rifle and confronted Petitioner in the living room, Petitioner reached for the rifle (D.I. 22-26 at 75-77); (2)

---

[5]At Petitioner's separate robbery trial (C Case), Detective Simpkiss testified that he tested the firearm for fingerprints using two different methods, but neither method yielded any prints. (D.I. 22-5 at 517-526) Additionally, the OCME's March 6, 2013 report analyzing the firearm for DNA concluded that "[t]he DNA profile of the evidentiary sample . . . is consistent with being a mixture containing the DNA of at least two individuals, of which at least one is male. No conclusions can be made as to the inclusion or exclusion of [Petitioner]." (D.I. 22-27 at 141-143)

concerned for his safety, Detective Bumgarner knocked Petitioner down, and Petitioner was on "on the ground and on his back looking up" while Detective Bumgarner demanded that Petitioner show his hands (D.I. 22-26 at 77); (3) while Petitioner was lying on his back, Petitioner used his feet to scoot toward the couch, and was reaching under the couch with one of his hands (*Id.*); (4) Detective Bumgarner kicked Petitioner, who was still reaching under the couch while "almost rolling onto his stomach" (D.I. 22-26 at 77-78); (5) several other officers jumped on Petitioner and tried to secure his hands while he continued to reach under the couch (D.I. 22-26 at 78); and (6) Detective Bumgarner and another officer searched the apartment to ensure that no one else was there. (D.I. 22-26 at 79)  Officer Willson testified that he entered the apartment behind Detective Bumgarner, and when he reached the living room, several officers were already apprehending Petitioner, who was lying on his stomach and reaching under the couch.  (D.I. 22-26 at 96-99)  After arresting Petitioner, the police searched under the couch and found a loaded firearm.  (D.I. 22-26 at 103)

The foregoing testimony was sufficient to establish that Petitioner constructively possessed the loaded gun found under the couch.  Even if defense counsel arguably should have presented the lack of fingerprint and DNA evidence on the gun, Petitioner cannot demonstrate a reasonable probability that he would not have been found guilty of PFBPP but for defense counsel's counsel failure to introduce the inconclusive findings of a police officer's search of the firearm for fingerprints and the OCME's DNA report.  Therefore, the Court will deny Petitioner's assertion of ineffective assistance of counsel in the D Case for failing to satisfy § 2254(d).

28

## IV.   CERTIFICATE OF APPEALABILITY

The Court must decide whether to issue a certificate of appealabilty.  *See* 3d Cir. L.A.R. 22.2 (2011).  A certificate of appealability is appropriate when a petitioner makes a "substantial showing of the denial of a constitutional right" by demonstrating "that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong."  28 U.S.C. § 2253(c)(2); *see also Slack v. McDaniel*, 529 U.S. 473, 484 (2000).  Additionally, if a federal court denies a habeas petition on procedural grounds without reaching the underlying constitutional claims, the court is not required to issue a certificate of appealability unless the petitioner demonstrates that jurists of reason would find debatable: (1) whether the petition states a valid claim of the denial of a constitutional right; and (2) whether the court was correct in its procedural ruling.  *See Slack,* 529 U.S. at 484.

The Court has concluded that the instant Petition fails to warrant federal habeas relief.  Reasonable jurists would not find this conclusion to be debatable.  Accordingly, the Court will not issue a certificate of appealability.

## V.   CONCLUSION

For the reasons discussed above, the Court will deny the instant Petition without an evidentiary hearing.  The Court will issue an Order consistent with this Memorandum Opinion.